## AMERICAN BANKERS LIFE INS. CO. v. BAKER.

### No. 4992.

Court of Civil Appeals of Texas. Amarillo.

Feb. 20, 1939.

Rehearing Denied March 20, 1939.

Mabel Grey Howell, of Waco, for appellant.

H. H. Cooper, of Amarillo, for appellee.

FOLLEY, Justice.

This suit was filed by the appellee, Mrs. Bessie L. Baker, against the appellant, American Bankers Life Insurance Company, to recover upon a certificate of insurance issued by the appellant upon the life of William N. Baker, deceased husband of the appellee. The appellant is a state-wide mutual assessment benefit association of Waco, Texas, operating under article 4859f, Vernon's Ann.Civ.Statutes of Texas. The policy herein involved in the sum of $2500 was issued by the appellant upon the life of the deceased on January 9, 1937. This policy contained a provision to the effect that if a claim arose under the certificate within four months from the effective date of the policy the benefits should be only one-fourth of those otherwise applying thereunder, plus a refund of all sums paid as premiums on the policy. The deceased died on April 7, 1937, within such four month period. The cause of his death, as shown from the death certificate filed by Dr. Willis H. Flamm, his physician, was

coronary occlusion contributed to by hypertension. The trial court without the intervention of a jury rendered judgment for the appellee for the sum of $657.25, which included one-fourth the face amount of the policy, plus the sum of $32.25 paid by the deceased as the initial payment on the policy. From this judgment the appellant has appealed to this court.

■ The appellant seeks to avoid liability upon the policy by reason of the alleged false answer of the deceased when asked in the application for the insurance if he had ever had any symptoms of rheumatism. This application was made a part of the contract of insurance. In section 7 of such application a general question was asked the deceased with reference to his having had symptoms of some twenty diseases, among which was rheumatism. This question was answered in the negative. In making proof of death of the deceased, in answer to question No. 6 inquiring if the deceased ever suffered from rheumatism, the appellee answered, "Slightly in '32". This ex parte statement of the appellee constitutes the substance of the testimony upon which the appellant relies to show that the answer of the deceased to the above question in the application was false. The only corroboration of such ex parte statement was from Judge W. E. Gee, Judge of the 108th District Court of Potter County, Texas, in whose court the deceased worked as court reporter from 1927 until his death in 1937. Judge Gee testified that some time about 1932 the deceased was in a run down condition from overwork, that he complained of his back, and that the deceased went to New Mexico for about a month for a vacation and rest. Judge Gee did not undertake to testify that the ailment of the deceased at such time was caused by rheumatism. Granting that the deceased had a slight attack of rheumatism in 1932, the testimony of Dr. J. R. Wrather, witness of the appellant, presented a controverted issue of fact as to whether or not such attack contributed to his death in 1937. His testimony was that the materiality of the attack as a contributing cause of his death would depend upon the severity of the attack; that a slight attack would not amount to anything, and he would not regard it as serious unless it recurred. There was no evidence of any recurrence of the alleged attack. The statute under which the appellant operates as an insurance company provides that no misrepresentations in the

application "shall constitute a defense unless same shall be shown to be material to the risk assumed * * *." Sec. 11, art. 4859f, Vernon's Ann.Civ.Statutes. The appellant failed to show the alleged misrepresentation was material to the risk assumed, and the judgment of the trial court has foreclosed such controverted issue against the contention of the appellant.

The appellant further asserts that the judgment of the trial court is excessive under the terms of the policy. This contention is based upon two paragraphs of the policy, one of which, as above stated, limited recovery to one-fourth of the benefits otherwise applying if a claim arose within four months from the effective date of the certificate. The other provision is to the effect that if the insured died within one year from the effective date of the certificate from certain diseases, one of which was circulatory or organic trouble, then the benefit should be one-half of the amount otherwise payable, plus the refund of all premiums paid by the insured. The provisions of the policy upon which the appellant relies are as follows:

"In consideration of the small initial payment and the nominal subsequent payments as required hereunder it is provided that in the event of a claim arising under this certificate within four months from the effective date of this certificate or any reinstatement thereof, the benefits to which the beneficiary shall be entitled shall be one-fourth of those otherwise applying hereunder, plus the refund of all amounts paid hereon for such Member while this certificate was continuously in force.

"In further consideration of the nominal payments hereunder it is mutually understood and agreed that should a Member, within one year from the effective date of this certificate or reinstatement, die as a result of or caused or complicated by any form of the following: circulatory or organic trouble (including 'acute indigestion'), diabetes, tuberculosis, cancer, apoplexy or bacterial infection—then the benefits payable shall be one-half the amount otherwise payable hereunder, plus the refund of all amounts paid hereon for such Member while this certificate was continuously in force."

Since the testimony shows that the deceased died of coronary occlusion about two months from the effective date of the policy, the appellant contends that instead of $625 being the amount of insurance

recoverable, only one-half such amount, $312.50, constitutes the maximum insurance payable under the policy. In other words, the position of the appellant is that only one-half of one-fourth of the face amount of the policy, plus the premiums paid, may be recovered herein.

From 'a careful analysis of the first paragraph above quoted it will be seen that it may be paraphrased into the following language: "If the insured dies within four months from any cause the benefits shall be one-fourth of the face amount of the policy, or $625.00." This provision, standing alone, is plain, certain, definite and unambiguous. It would necessarily embrace the disease to which the death of William N. Baker was attributed. It was an unconditional promise on the part of the appellant to pay his beneficiary $625, plus the return of the premium paid, in the event Baker died of coronary occlusion or any other disease within the four month period. Then there follows the second paragraph which, if construed as appellant contends, would divide the $625 by two if the insured died of circulatory or organic trouble within the first four months, yet such circulatory or organic trouble was necessarily included in the provisions of the first paragraph since such paragraph covered, all diseases.

 The construction of the second paragraph, as contended by the appellant, would be a repudiation of the promise in the first paragraph to pay one-fourth of the amount otherwise payable under the policy upon the death of the insured from any cause. There are no restrictions in the first paragraph as to diseases. If such paragraph had promised. to pay one-fourth of the policy if the insured died within the first four months from any disease except circulatory or organic trouble, or the other diseases mentioned in the second paragraph, then a different situation would be presented. But such is not the case. The first paragraph is all inclusive, comprehensive and non-restrictive, yet, we grant, the language of the second paragraph renders such promise ambiguous and uncertain. The first four months of the life of the policy are purportedly covered by the provisions of both paragraphs. One is an unconditional promise to pay one-fourth the amount of the policy if the insured dies from any cause during such period, and the other is that the company will pay one-half "the amount otherwise payable" if the insured dies of circulatory

trouble, which is certainly one of the causes under which a claim might arise under the first paragraph. Just what was meant by the phrase "the amount otherwise payable" is very indefinite. As contended by the appellant it could refer to the amount stipulated in the first paragraph. With just as much logic it might refer to the $2500 stated as the face amount of the policy. The above provisions, to say the least, are susceptible of double construction. On the whole, we think the most logical interpretation would be that they provide that if the insured died during the first four months from any cause the amount recoverable would be one-fourth of $2500 plus the premiums paid, and thereafter, for the next eight months, if the insured died of the diseases enumerated in the second paragraph, the amount recoverable would be one-half of $2500, plus the return of the premiums paid. Sessions v. National Mut. Ben. Ass'n of Texas, Tex.Civ.App., 103 S. W.2d 815. This being the most logical construction, we have no doubt that the insured so understood the policy or that the appellant intended that he should so understand it. Under a similar situation as here presented, Justice Greenwood, speaking for the Supreme Court of Texas, in Commonwealth Bonding & Casualty· Ins. Co. v. Bryant, 113 Tex. 21, 240 S.W. 893, 894, said: "Who can doubt that the insured actually believed that he had at least the stated degree of indemnity, under the policy, or that the insurer actually intended him to so believe? We are certain that any construction of the language of the policy, more favorable to the insurer, would not accomplish, but would defeat, the real intent and purpose of the contracting parties."

 Under the general rule of construing an ambiguous insurance contract, in Couch's Cyclopedia of Insurance Law (Vol. 1) 392, para. 188, we find this language: "It is agreed that if an insurance contract is so drawn as to be equivocal, uncertain, or ambiguous, and to require interpretation because fairly susceptible of two or more different, but sensible and reasonable, constructions, the one will be adopted which, if consistent with the objects of the insurance, is most favorable to the insured." ·

Again, in National Surety Co. v. Chalkley, Tex.Civ.App., 260 S.W. 216, 218, it is said: "Insurance companies form their own policies, use their own language, except when compelled by a legislature to use a

 

standard policy, insert their own compli- cated, and in some instances obscure and oracular, conditions, and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy. Without such liberality of construction the insured person would have a perilous journey to traverse in obtaining insurance money."

From what has been said it follows that we think there was no error in the action of the court in rendering judgment for one-fourth of the face amount of the policy plus the return of the premium paid.

The judgment is affirmed.